

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | |
|---|---|
| BRADLEY BOTVINICK, M.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RUSH UNIVERSITY MEDICAL )<br>CENTER, ANTHONY D. )<br>IVANKOVICH, HEATHER NATH, )<br>DAVID M. ROTHENBERG, )<br>KENNETH J. TUMAN and WAYNE )<br>SOONG, )<br>)<br>Defendants. | 06 C 2054<br><br>Judge Ronald A. Guzmán |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants for fraud, conspiracy, malicious interference with business expectancy, and breach of contract. Defendants have filed a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss.[1] For the reasons set forth below, the motion is granted in part and denied in part.

### Background

In 2004 and 2005, plaintiff was a resident in the anesthesiology program at Rush University Medical Center ("Rush"). (Compl. ¶ 8.) During that time, Anthony D. Ivankovich was chairman of Rush's anesthesiology resident program, David M. Rosenberg was a professor of anesthesiology, and Heather Nath, Kenneth J. Tuman and Wayne Soong were doctors employed by Rush. (*Id.* ¶¶ 3-7.)

---

[1] Defendants have also asked, in the alternative, for a summary judgment pursuant to Rule 56. The Court will not entertain a summary judgment motion until after discovery has been completed. Thus, we analyze this motion solely under Rule 12(b)(6).

In December 2004, someone ordered a package from Lover's Lane, an adult-themed store, and sent it to Dr. Nath's office. (*Id.* ¶¶ 9-11.) The billing statement showed that the package was ordered in plaintiff's name and with his credit card, but the email address and telephone number listed on it were not his. (*Id.* ¶ 10.) Subsequent investigation revealed that the order was placed on a computer terminal in an office at Rush at a time when plaintiff was not in the facility. (*Id.* ¶ 12.)

When plaintiff completed his residency, he accepted a position at Morton Plant Mease Health Care in Florida ("Morton"), which granted him temporary privileges. (*Id.* ¶¶ 13, 18.) Before plaintiff arrived in Florida, however, Morton notified him that he would not be granted permanent staff privileges and his temporary privileges had been revoked. (*Id.* ¶ 19.) Plaintiff alleges that Morton made this decision because defendants told its credentialing committee about the Lover's Lane incident. (*Id.* ¶ 20.)

Nonetheless, Morton apparently told plaintiff he could obtain privileges if he secured letters of recommendation from defendants. (*Id.* ¶¶ 21-23.) Defendants would not provide the letters unless plaintiff gave them a general release from liability arising from their conduct during his residency. (*Id.* ¶ 24.) Plaintiff would not sign a release, and defendants did not send the letters. (*Id.* ¶ 25.) As a result, plaintiff was forced to withdraw his application for privileges at Morton and accept a position elsewhere at a reduced rate of compensation. (*Id.* ¶ 26.)

## The Legal Standard

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in the plaintiff's favor. *Forseth v. Vill. of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear

that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## Discussion

In Count I, plaintiff alleges that defendants Rush, Nath, and Soong conspired to defraud him by causing items from Lover's Lane to be ordered with his credit card. In Count IV, plaintiff alleges that Rush and all of the defendant doctors conspired to prevent him from working in his chosen profession. Defendants contend that these claims must be dismissed because a principal cannot conspire with its agents. The Court agrees.

In the words of the Illinois Supreme Court, "because the acts of an agent are considered in law to be the acts of the principal there can be no conspiracy between a principal and an agent." *Buckner v. Atl. Plant Maint.*, 694 N.E.2d 565, 571 (Ill. 1998); *see Bilut v. N.W. Univ.*, 692 N.E.2d 1327, 1332-33 (Ill. App. Ct. 1998) (holding that university and its faculty members were legally incapable of entering into a civil conspiracy to defraud a student). Plaintiff alleges that all of the defendant doctors were employees of Rush. (Compl. ¶¶ 3-7.) Because, as a matter of law, the doctors could not conspire with Rush, Counts I and IV must be dismissed.[2]

In Count II, plaintiff alleges that defendants maliciously interfered with a valid business expectancy by telling Morton's credentialing committee about the Lover's Lane incident. Defendants say this claim must be dismissed because anything they told the Morton committee is privileged under the Illinois Medical Studies Act.

---

[2]Because this issue is dispositive, the Court need not address the other arguments defendants raise for dismissal of these claims.

In relevant part, that Act provides:

> All information, interviews, reports, statements, memoranda, recommendations, letters of reference or other third party confidential assessments of a health care practitioner's professional competence, or other data of . . . [credentialing] committees of licensed or accredited hospitals . . . used in the course of internal quality control or of medical study for the purpose of reducing morbidity or mortality, or for improving patient care or increasing organ and tissue donation, shall be privileged, strictly confidential and shall be used only for medical research, increasing organ and tissue donation, the evaluation and improvement of quality care, or granting, limiting or revoking staff privileges or agreements for services . . . .

735 Ill. Comp. Stat. 5/8-2101. Moreover, the Act says that such information "shall not be admissible as evidence, nor discoverable in any action of any kind in any court." *Id.* § 5/8-2102. Thus, if the privilege applies, plaintiff's tortious interference claim must be dismissed.

The existence of a privilege, however, is an affirmative defense, and plaintiff "need not anticipate or overcome affirmative defenses" in his complaint. *Hollander v. Brown*, 457 F.3d 688, 691 n.1 (7th Cir. 2006). Consequently, an affirmative defense can be the basis for a Rule 12(b)(6) dismissal only if "the complaint alleges facts that create an ironclad defense." *Foss v. Bear, Stearns & Co., Inc.*, 394 F.3d 540, 542 (7th Cir. 2005).

This is not one of those cases. Plaintiff alleges that defendants "communicated" to Morton's credentialing committee information about the Lover's Lane incident, prompting Morton to deny plaintiff's application for privileges. (Compl. ¶¶ 20, 37.) Without more facts, it is not clear whether that alleged communication is covered by the privilege. "[N]ot all [information] considered by a credentialing committee [is] subject to the privilege." *Stricklin v. Becan*, 689 N.E.2d 328, 330 (Ill. App. Ct. 1997). To be privileged, information must be generated by, not simply considered during, the peer-review process. *Id.* at 331. "[I]nformation [that] exists in some nonprivileged form" does not become privileged simply because it is "plac[ed] . . . in front of the committee." *Id.* Thus, as the *Stricklin* court noted, the privilege

4

does not apply to a letter or other document that was considered by a credentialing committee but was prepared prior to, or for a purpose other than, the review process. *Id.*

Plaintiff does not allege whether defendants' "communicat[ion]" to Morton was oral or written. If it was written, we do not know when or in what context the document was prepared. If it was oral, we do not know whether defendants intended or even knew that the communication would be used in Morton's credentialing process. Though we cannot tell at this stage whether the privilege applies to the alleged communication, we can imagine a set of facts under which it would not. Accordingly, defendants' motion to dismiss the tortious interference claim as barred by the Medical Studies Act is denied. *See Alper v. Altheimer & Gray*, 257 F.3d 680, 684 (7th Cir. 2001) ("[I]f it is possible to hypothesize a set of facts, consistent with the complaint, that would entitle the plaintiff to relief, dismissal under Rule 12(b)(6) is inappropriate." (quotation omitted)).

Given the Court's conclusion that the privilege issue cannot be resolved on the pleadings, plaintiff's claim that the Act violates the Illinois Constitution, which it raises in opposition to this motion, is not ripe. Unless and until the Court determines that the privilege applies in this case, its constitutionality is an abstract legal question not an actual controversy ready for adjudication. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quotation omitted)). Therefore, at this juncture, the Court will not address plaintiff's constitutional claim.[3]

But privilege is not the only reason defendants offer for dismissal. They also say the

---

[3]Plaintiff has also filed a motion to declare the Medical Studies Act unconstitutional. What plaintiff seeks, in reality, is a declaratory judgment, a claim for relief not included in his complaint. If plaintiff wants to raise such a claim, he must amend his complaint.

claim is infirm because plaintiff has not alleged enough facts to support it. A tortious interference claim is not, however, subject to Rule 9(b), so plaintiff does not have to allege any facts. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("A complaint . . . cannot be dismissed on the ground that it is conclusory or fails to allege facts. The federal rules require (with irrelevant exceptions) only that the complaint state a claim, not that it plead the facts that if true would establish (subject to any defenses) that the claim was valid."). Rather, to state a viable claim plaintiff must simply allege that: (1) he had a reasonable expectation of entering into a business relationship; (2) defendants knew about his expectation; (3) defendants' deliberate interference prevented that expectation from becoming a reality; and (4) plaintiff was damaged as a result. *Fellhauer v. City of Geneva*, 568 N.E.2d 870, 878 (Ill. 1991). The complaint contains the requisite allegations. (*See* Compl. ¶¶ 13, 18, 21, 35, 37-40). Defendants' motion to dismiss Count II is, therefore, denied.

Count V[4] is a breach of contract claim. To state such a claim, plaintiff must allege "'(1) the existence of a valid and enforceable contract; (2) the performance of the contract by plaintiff; (3) the breach of the contract by defendant[s]; and (4) a resulting injury to plaintiff.'" *Priebe v. Autobarn, Ltd.*, 240 F.3d 584, 587 (7th Cir. 2001) (quoting *Hickox v. Bell*, 552 N.E.2d 1133, 1143 (Ill. 1990)). Defendants say plaintiff has not alleged the first element, that there was a contract between plaintiff and defendants.

The Court agrees. Plaintiff alleges that Rush and its faculty "owe[d] [plaintiff] . . . an obligation to provide and document achievements and accomplishments required to meet all educational objectives of the residency program." (Compl. ¶ 47.) He does not, however, allege that this obligation arises from a valid contract. Thus, he has not stated a viable breach of contract claim.

---

[4]There is no Count III in the complaint.

## Conclusion

For the reasons stated above, defendants' motion to dismiss [doc. no. 18] is granted in part and denied in part. The motion is granted as to Counts I and IV, which are dismissed with prejudice, and Count V, which is dismissed without prejudice. The motion is otherwise denied. Plaintiff's motion to declare the Medical Studies Act unconstitutional [doc. no. 47] is stricken. Plaintiff has fourteen days from the date of this Memorandum Opinion and Order to amend his complaint in accordance with this Order. If he fails to do so, Count V will be dismissed with prejudice.

**SO ORDERED.**   ENTER: 12/5/06

RONALD A. GUZMAN
**United States District Judge**